UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| KAREN ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:19-CV-485-REW |
| | ) | |
| ANDREW SAUL, Commissioner of Social Security, | ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Karen Ross appeals the Commissioner's denial of her application for Disability Insurance Benefits (DIB). DE 12. The parties filed dueling summary judgment motions. DE 12 (Plaintiff's Motion for Summary Judgment); DE 14 (Defendant's Motion for Summary Judgment). The Court, having considered the full record under governing law, **GRANTS** the Commissioner's motion (DE 14) and **DENIES** Ross's motion (DE 12) because substantial evidence supports the findings resulting in the administrative ruling, and the decision rests on proper legal standards.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ross is 55 years old. R. at 194. Her disability application states that she suffers from "fibromyalgia, a major depressive disorder, an anxiety disorder, a pain disorder, several gastrointestinal disorders, headaches and degenerative disc disease." DE 12-1 at 2. Ross alleges that these conditions—her fibromyalgia and depression in particular—cause "pain, fatigue, depression, anxiety, headaches, memory problems, brain fog, nausea, vomiting, diarrhea and constipation" that render her incapable of performing work on a regular and ongoing basis. DE 12-

1 at 2-3.[1] As a result, Plaintiff maintains that she is "disabled within the meaning of the Social Security Act." DE 12-1 at 11. Ross first applied for benefits on December 15, 2016, when she was 51 years old. R. at 19.[1] Her claimed onset date was August of that year. R. at 85. That application was denied on April 20, 2017 after an initial review and then again on June 27, 2017 after reconsideration. R at 19. Ross then requested a hearing to review her claim. R at 19. That hearing occurred on January 30, 2019 before Administrative Law Judge Karen Jackson. R at 19. On April 19, 2019, the ALJ issued her decision. R. at 16-32.

In that decision, the ALJ made the following findings in accordance with Social Security's required five-step sequence. First, that Ross "meets the insured status requirements of the Social Security Act through December 31, 2021." R. at 21. Next, that Ross "has not engaged in substantial gainful activity since August 9, 2016," the alleged onset date. R. at 21. The ALJ then found that Ross "has the following severe impairments: degenerative disc disease of the cervical and lumbar spines, fibromyalgia, a history of esophageal varices, a history of fatty liver disease, a history of hiatal hernia status-post repair, Raynaud's syndrome, peripheral neuropathy, major depressive disorder, anxiety disorder, pain disorder, and somatization disorder." R. at 22.[2] The ALJ explained her reasons for finding that Ross does not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." R. at 23.

---

[1] As her physician Dr. David Overstreet pithily put it, "Ms. Ross 'literally has about 30 things written down that are all somatic issues' but 'it all boils down to her fibromyalgia and long-standing depression." DE 12-1 at 10.

[2] Judge Jackson also noted that "claimant's obesity, restless leg syndrome, hypertension, headaches, and degenerative joint disease of the left hip are non-severe impairments." R. at 22.

2

The ALJ then reached the conclusion at the center of this dispute, formulating Ross's RFC in accordance with her view of the medical, testimonial, and other record evidence.  R. at 25 (identifying characteristics of Ross's RFC, which would permit "light work," per § 404.1567(b), with specific postural and non-exertional limits).[3]   In arriving at this decision, Judge Jackson gave great weight the opinions of Anthony B. Karam, D.O., who "opined that claimant could generally perform activities with the light exertional level," (R. at 29; *see also* Ex. 17F) and four State Agency consultants: Donna Sadler, M.D.; Robert K. Brown, M.D.; Keith Bauer Ph. D.; Jane Brake, Ph. D.. R. at 29. *See also* Ex. 2A; 4A. She gave partial weight to the opinion of Dr. Jennifer Fishkoff. R. at 28; *see also* Ex. 18F. She gave little weight to the opinions of Lisa Marie Conway, PA, and little weight to the medical opinions[4] of Ross's treating physician, Dr. David Overstreet, M.D.. R. at 28.[5]

Based on the RFC formulation, and taking testimony from the involved VE, the ALJ found Ross not disabled.  R. at 32.  Available work exists, for a person under the defined RFC, in significant numbers in the national economy. R. at 32. Ross does not challenge that part of the decision.

---

[3] §404.1567(b)(" Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."). *See also* R. at 25.
[4] She properly gave "no weight" to Dr. Overstreet's conclusory opinions on Ross's ability to work. R. at 28. The treating source rule only applies to opinions that "reflect judgment about the nature and severity of an impairment or impairments" including their symptoms, diagnosis, and prognosis. § 404.1527(a)(1).
[5] Plaintiff's brief also mentions arthritis specialist Dr. Cory Hatfield and A.P.R.N. Neda Wofford. Both, per Plaintiff, corroborated Ms. Ross's FM diagnosis. DE 12-1 at 3-4; R. at 840-45 (15F); R. at 1075-1085 (26F). The ALJ does not mention either by name in her decision. Given that that Ross's FM diagnosis not in dispute, any error, if there even was one, in not mentioning their opinions appears to have been harmless.

3

The ALJ could not have reached the conclusion that Ross is capable of light work without discounting Dr. Overstreet's opinion.[6] The decision to give "little weight" to Dr. Overstreet's medical opinions hinged largely on the ALJ finding his opinions "inconsistent with the objective evidence of record." R. at 28. Specifically, she noted that:

- Claimant's physical examinations did not provide evidence supportive or indicative of the significant limitations Dr. Overstreet described. *See also* R. 26-27 ("[P]hysical examinations have noted normal movement in her extremities, bilaterally. (Ex. 12F/12; 25F; 26F). Finally, physical examinations have not noted deficits in her gait, ambulation, station, reflexes, strength, or sensation. (Ex. 17F/5; 25F; 26F; 28F; 32F)."). R. at 27.

- Dr. Overstreet's findings did not cite to objective evidence in support of his views on Ross's limitations. R. at 28. *See also* DE 14 at 9 ("Dr. Overstreet's examination findings [] had 'not noted significant deficits that would justify these limitations.'").

- "In general, the claimant has exhibited a pleasant mood and a cooperative attitude during her physical examinations. (Ex 12F/12; 25F/5; 26F)." R. at 27.

- "[T]he undersigned has considered the claimant's reported activities of daily living and finds them to be inconsistent with her allegations. For example, the claimant testified that she can drive, play computer word games, watch television, read, and wash the dishes. The claimant also testified that she is able to check her email. (Hearing Testimony). Furthermore, the undersigned notes that the claimant has not fully complied with treatment. The claimant has refused to go to counseling or seek therapy. (Ex. 19F). The claimant also failed to follow up with GI as scheduled. (Ex. 28F/11). Moreover, the claimant's treatment in general has been conservative with prescribed medications and vitamin supplements. (Ex. 31F)." R. at 27.

Plaintiff now moves the Court to "enter summary judgment in her favor, reverse the unfavorable decision of the Defendant Agency denying her application for Disability Insurance

---

[6] Dr. Overstreet found that, in an eight-hour workday, Ross can sit for only three hours and stand or walk for no more than an hour; cannot use either hand for pushing and pulling; cannot use her feet for repetitive movements as in operating foot controls; she can lift up to twenty pounds and carry only ten. *See* R. at 28; R. at 978; DE 12-1 at 10. *See also* R. 978-1011 (Dr. Overstreet Treatment Records). Per § 404.1567(b), light work requires a substantial ability to frequently lift or carry objects weighing up to 10 pounds, handle a "good deal of walking or standing" or, when sitting, handle "some pushing and pulling of arm or leg controls."

Benefits and remand this matter for a new hearing." DE 12-1 at 1. Defendant, contrarily, moves

for summary judgment affirming the ALJ's decision. DE 14-1.

## II.    ANALYSIS

### A.  Standard of Review

The Court has carefully considered the ALJ's decision, the transcript of the administrative

hearing, and the pertinent administrative record. The Court has turned every apt[7] page, primarily

focusing on the portions of the record to which the parties specifically cite.

Judicial review of an ALJ's decision to deny disability benefits is a limited and deferential

inquiry into whether substantial evidence supports the denial's factual decisions and whether the

ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405

(6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v.*

*Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*,

91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review

for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact,

if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994);

*see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try

the case *de novo*, resolve conflicts in the evidence, or revisit questions of credibility. *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the

---

[7] That is, those records relevant to the particular issues Ross presents for review.

Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the agency decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

The ALJ, when determining disability, conducts the recognized five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4). At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i).[8] At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ defines RFC and considers whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can

---

[8] Here, Ross seeks only Disability Insurance Benefits (DIB). Accordingly, 20 C.F.R. § 404 controls, not § 416. However, the "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table); *see also Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013) ("The standard for disability under both the DIB and SSI programs is virtually identical."), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013). Accordingly, 20 C.F.R. §§ 404 and 416 are largely interchangeable.

6

perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4)(iv). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834 F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

## B. The ALJ did not reversibly err

Ross alleges that the ALJ failed to apply the treating source rule when evaluating the opinion of Ross's treating physician. As a result, says Ross, the decision does not comply with the Social Security Administration's requirement that ALJs support their decisions with "good reasons." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Ross also argues that the ALJ did not follow the analytical mandates of SSR 12-2p, which guides review of fibromyalgia-related disability claims. [9] DE 12-1 at 1. An "ALJ's failure to follow agency rules

---

[9] Differing Sixth Circuit opinions alternatively describe the "the good reasons requirement" as a part of and separate from the treating physician rule. *See Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020); *but see Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 436–37 (6th Cir. 2018); *Wilson*, 378 F.3d at 544. Accordingly, the line between the treating source rule and good reasons requirement, if it exists at all, is unclear. Plaintiff's motion for summary judgment attacks the same decisions as violative of both the treating source rule and the good reasons requirement. *See e.g.* DE 12-1 at 5 (arguing that in "assign[ing] less weight to [Dr. Overstreet's opinion] than she did the opinion of" a consultative evaluator and two non-examining, non-treating State Agency consultants, the ALJ violated the treating source rule); DE 12-1 at 13 ("[T]he ALJ did not cite good reasons for rejecting Dr. Overstreet's opinion in favor of the opinions of a

and regulations denotes a lack of substantial evidence" and typically should be reversed. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 729 (6th Cir. 2014) (quoting *Cole v. Astrue*, 661 F.3d 931, 939-40 (6th Cir. 2011)).

Ross now alleges a failure to follow agency rules and seeks reversal. The Court finds that remedy not warranted. First, the procedural errors in the ALJ's decision, if any, are harmless because the decision still met the substantive requirements of the treating source rule and the good reasons requirement. *Thaxton v. Comm'r of Soc. Sec.*, 815 F. App'x 955, 960 (6th Cir. 2020). Second, the ALJ applied SSR 12-2p within the bounds of her discretion. *Wilson*, 378 F.3d at 549.

*Any Procedural Error was Harmless and Therefore Not a Basis for Reversal*

The cornerstone claim in Ross's appeal is that the ALJ violated the treating physician rule and its close counterpart, or subsidiary, "good reasons" requirement. DE 12-1 at 1. *See also Wilson*, 378 F.3d at 544. Under the "treating physician rule,"[10] an ALJ is "required to give controlling weight to a treating physician's opinion, so long as that opinion is supported by clinical and laboratory diagnostic evidence not inconsistent with other substantial evidence in the record."[11] *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). "If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed by balancing [the factors listed in 20 C.F.R. § 404.1527(c)(2)–(6)]: length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the

---

consultative evaluator who did not test for fibromyalgia and two state agency physicians who did not consider fibromyalgia as an impairment."). Undoubtedly, the weight assignment requires "good reasons," per the language of the reg.

[10] Also referred to as the "treating source" rule. This order uses both terms interchangeably.

[11] Per the SSA, a treating source is an "acceptable medical source" that "has, or has had, an ongoing treatment relationship with [a claimant]." 20 C.F.R. § 404.1527(a)(2).

record as a whole and is supported by relevant evidence." *Thaxton*, 815 F. App'x at 959. *See also*

*Blakley*, 581 F.3d at 408 (quoting SSR 96-2p (SSA), 1996 WL 374188, at *4 (July 2, 1996))

("Treating source medical opinions are still entitled to deference and must be weighed using all of

the factors provided in 20 C.F.R. § 404.1527 and 416.927.").[12]

In addition to weighing the § 404.1527 factors, the ALJ is also required to satisfy the "good

reasons" requirement by including in the decision "sufficiently specific reasons" that "make clear

to any subsequent reviewers the" reasons for the weight given to the treating source's opinion.

*Thaxton*, 815 F. App'x at 960.   The "good reasons" requirement ensures that "'claimants

understand the disposition of their cases[.]'" *Id.* (quoting *Cole*, 661 F.3d at 938). Failure to abide

by these procedural requirements "warrants a remand unless [the error] is harmless." *Gentry,* 741

F.3d at 723.

As a treating source, Dr. Overstreet's medical opinions[13] are within scope of the rule and

therefore due the procedural mechanics and deference described above.[14] Here, Ross cites several

procedural flaws in the decision.  The Court agrees in part.  Contrary to the argument, the ALJ did

recognize Dr. Overstreet as a treating source.  Counsel had stressed Dr. Overstreet's status at the

hearing.  R. at 43 (calling him Ross's "primary treating physician").  The ALJ recognized the role,

specifically analyzing "Dr. Overstreet's *treating* records[.]" R. at 28 (emphasis added).  She also

---

[12] In March of 2017, the Social Security Administration rescinded SSR 96-2p, 96-5p, and 6-3p. However, the rescission was only effective for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96–2p, 96–5p, and 06–3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017).

[13] *See* n. 4 supra, distinguishing between "medical" opinions within the scope of the rule and conclusory opinions that are not within the scope of the rule.

[14] Dr. Overstreet had an ongoing treatment relationship with Ross that lasted for several years and was outside the scope of the disability claim. Therefore, he is a treating physician. 20 C.F.R. § 404.1527(a)(2); *Hargett*, 964 F.3d at 551.

catalogued the full breadth and history of Dr. Overstreet's records concerning Ross, thus again displaying cognizance of the treating relationship at issue.   Thus, the threshold contention fails.

The decision is spare with respect to the required treating source analysis.  Although the ALJ did note that she had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527," the decision does not address how Dr. Overstreet's status as a treating source affected the analysis or extensively discuss by name any of the § 404.1527(c) factors. R. at 25; DE 12-1 at 13. Instead, the opinion only explicitly addresses two of the seven required factors: the degree to which the opinion is consistent with the record as a whole and supported by relevant evidence. DE 12-1 at 13. Collectively, these omissions "test[] the contours of the procedural requirements of § 404.1527." *Thaxton*, 815 F. App'x at 960; *see also Hargett*, 964 F.3d at 554.

However, these omissions are not a basis for reversal. A § 404.1527 procedural error does not justify reversal if the error is harmless. *Thaxton*, 815 F. App'x at 960; *Shields*, 732 F. App'x at 438. An error is harmless if 1) "'a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it'; 2) 'the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion'; or 3) 'the Commissioner has met the goal of the procedural safeguard of providing good reasons.'" *Thaxton*, 815 F. App'x at 960 (quoting *Wilson*, 378 F.3d at 547).

Here, the third prong applies to excuse the ALJ's procedural faults.[15] This category is reserved for the "'rare case' where the ALJ has met the 'goal' of § 404.1527, "'if not. . . its letter.'" *Thaxton*, 815 F. App'x at 960 (quoting *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462,

---

[15] The first two bases for finding harmless error do not apply. Dr. Overstreet's opinion is not patently deficient because it reflects defined criteria and a lengthy treatment course. *Hargett*, 964 F.3d at 554. And the Commission obviously did not adopt Dr. Overstreet's opinion.

472 (6th Cir. 2006) (per curiam)). To qualify, the procedurally flawed decision must, "at the very least . . .implicitly provide sufficient reasons for giving less weight to treating-source opinions." *Id.* Sufficient reasons do more than "merely indicat[e] a rejection of the treating-source opinions[.]" *Id.* They "make clear the specific ways in which the overall . . . record is consistent or inconsistent with the various opinions on which the decision relies—or does not rely." *Hargett*, 964 F.3d at 554; *see also Nelson*, 195 F. App'x at 470 (upholding an ALJ's procedurally flawed decision because it sufficiently explained the reason for the rejection of the treating physician's opinions and gave enough reasoning to allow for meaningful review). *See also Thaxton,* 815 F. App'x at 960 (upholding an ALJ decision that did not use the term "controlling weight" or balance the § 404.1527(c) factors because the Court found that the decision "provided sufficient reasons for giving little weight to [the treating source's] opinion").

The ALJ should have more intentionally and extensively discussed the rule and the seven §404.1527(c)(2)-(6) factors.[16] *See generally Blakley*, 581 F.3d at 408. Yet, despite those lapses, her decision still provides "sufficient reasons for giving less weight to treating-source opinions" in a manner that makes clear to Ross the reasons for the denial and provides enough evidence for meaningful review. *Id.* The ALJ precisely explains what led her to discount Dr. Overstreet's opinion. Ross's physical examinations, over the course of time and multiple encounters, did not provide corroborating evidence of the significant limitations that Dr. Overstreet noted. R. at 27-28. The ALJ was also persuaded by the lack of objective evidence supporting Dr. Overstreet's views. R. at 27-28. Further, the ALJ noted the extent to which the reports of other doctors and the

---

[16] The Court concedes that this decision is closer to the line than the one in *Thaxton*, which discussed not only how that source's opinion was inconsistent with the record, but also the entirety of the claimant's treating history with the treating source and the treating source's credentials. 815 F. App'x at 961. However, the ALJ's treatment still fits within the *Thaxton* harmlessness portal.

11

claimant's own behavior and self-assessments all belied or sharply undercut Dr. Overstreet's findings. R. at 26-27. Accordingly, the ALJ properly supported her decision not to afford Dr. Overstreet controlling weight.   In so concluding, the Court has traced the cited criticism, the cited Overstreet records, the treatment course described, and the ALJ's juxtaposition and analysis of same.  She viewed Dr. Overstreet not as just wrong but as "glaringly" wrong relative to the objective record evidence. R. at 28. In some ways, Dr. Overstreet simply seemed to throw his hands up in the face of Ross's innumerable and repetitive complaints. *See, e.g.*, R. at 593 ("There is just not an answer to her medical issues that I am aware of" also noting that Ross "refuses to go to counseling" and that Dr. Overstreet has prescribed "every medication that I can think of for fibromyalgia"); R. at 1010 (forgoing "clinical exam today" and observing: "As always, she has a litany of complaints").  In February 2017, Dr. Overstreet saw Ross but did not examine her.  R. at 1010.  In June 2017, Dr. Overstreet essentially scrapped his medication plan and intended to start from scratch. R. at 999. Mere months later, the doctor gave his categorical opinions on which Ross relies.  The ALJ, who through the decision cited to or considered each encounter between Dr. Overstreet and Ross, parsed closely for objective findings to match the degree of claimed limitations and reasonably found the proof supportive of Dr. Overstreet–over the entire period and encompassing all sources—lacking.

For similar reasons, the Court rejects Ross's allegation that the ALJ's weighting decisions regarding the other non-treating sources were not supported by "good reasons." DE 12-1 at 13.[17] As a treating physician, Dr. Overstreet enjoys a greater presumption of deference than any non-

---

[17] Per the brief: "[T]he ALJ did not cite good reasons for rejecting Dr. Overstreet's opinion in favor of the opinions of a consultative evaluator who did not test for fibromyalgia and two state agency physicians who did not consider fibromyalgia as an impairment." DE 12-1 at 13. For clarity of the record, the Court accepts this as a reference to Drs. Karam, Sadler, and Brown.

treating physicians (including one-time examiners and record reviewers). *Powers v. Comm'r of Soc. Sec.*, 356 F. Supp. 3d 695, 701 (S.D. Ohio 2018). However, "a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 379-80 (6th Cir. 2013). Accordingly, once an ALJ determines that a treating source is not due controlling weight, the ALJ is then only required to provide "'good reasons' for giving greater weight to the opinions of agency sources." *Helm v. Comm'r of Soc. Sec. Admin.*, 405 Fed.Appx. 997, 1002 (6th Cir. 2011).

The weight given to a non-treating source should be "based on the examining relationship (or lack thereof), specialization, consistency, and supportability," in addition to other factors "'which tend to support or contradict the opinion.'" *Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 501 (6th Cir. 2019)[18] (citing *Gayheart*, 710 F.3d at 376). The weight should also reflect "the degree to which [the non-treating sources] provide supporting explanations for their medical opinions." *Id.* at 500 (quoting 20 C.F.C. § 404.1527(c)(3)). A non-treating source should never enjoy less scrutiny than a treating source. *Gayheart*, 710 F.3d at 379. *See also* 20 C.F.R. § 404.1527(c). Where the opinions of examiners or non-treaters differ from those of a treating source or other evidence in the record, the ALJ's decision should confront those discrepancies. *Wilson*, 783 F. App'x at 501.

Here, the ALJ supported her decision to assign greater weight to the opinions of non-treating sources by pointing out, with detailed citations to the medical record, administrative record, and hearing, the extent to which the non-treating sources' opinions aligned with objective

---

[18] Not to be confused with *Wilson*, 378 F.3d.

and other evidence, while Dr. Overstreet's opinion did not. Non-treating source Dr. Karam's opinions (*see* Ex. 17F) were "consistent with the results of claimant's physical examinations [and] the findings he noted in his examination of [Ross]." R. at 29.[19] The ALJ also supported the "great weight" given to the opinions of State Agency consultants Donna Sadler, M.D. and Robert K. Brown, M.D. (Ex. 2A; 4A), by noting that each consulting expert has "specialized training and expertise that make them eminently qualified to render their respective opinions regarding the claimant's mental and physical ailments." R. at 29. Further, their opinions were consistent with Ross's "longitudinal medical history and self-reported daily activities" and supported by "detailed narratives that explain what evidence the consultants relied upon." R. at 30. For the foregoing reasons, the Court finds Judge Jackson validly supported her decision to assign greater weight to the opinions of non-treating sources than she did to the broad and categorical opinions of Dr. Overstreet.[20]

Although procedurally blemished, the decision under review still "serves the purpose of letting 'claimants understand the disposition of their cases.'" *Thaxton*, 815 F. App'x at 960 (quoting *Cole*, 661 F.3d at 937). The ALJ did more than "dismiss [the] treating physician's opinion as 'incompatible' with other evidence of record[.]" *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010). She "identif[ied] the specific discrepancies and [] explain[ed] why it is

---

[19] The ALJ noted the location of those examination records elsewhere in her decision. R. 27 *See also* Ex. 17F/5; 25F; 26F; 28F; 32F. (Ross's physical examinations).

[20] The ALJ concedes "some evidence has been added to the record since the State agency consultants' reviews." ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'") *Helm*, 405 F. App'x at 1002; *see also Dixon v. Comm'r of Soc. Sec.*, No. CV 19-11617, 2020 WL 2738246, at *5 (E.D. Mich. Mar. 23, 2020), *report and recommendation adopted*, No. 19-CV-11617, 2020 WL 2733859 (E.D. Mich. May 26, 2020).

the treating physician's conclusion that gets the short end of the stick." *Id.*; *Shields*, 732 F. App'x at 439. Properly demonstrating inconsistency satisfies the good reasons requirement. *Coldiron v. Comm'r of Soc. Sec*, 391 F. App'x 435, 440 (6th Cir. 2010) ("[T]he ALJ's proffered reasons for not crediting [treating physician's] opinion satisfy the good reason requirement."). Accordingly, there is no basis for reversal.

The Court makes a few additional points.  First, Ross chides the ALJ for discussing objective examination findings in the fibromyalgia context.  She also critiques Dr. Karam for not testing for fibromyalgia and the state reviewers for not referencing fibromyalgia.  The Court rejects these appraisals.  Ross presented multiple severe impairments, include degenerative disk disease, which implicated all examination results. Further, Dr. Karam specifically recognized the fibromyalgia diagnosis, which dispensed with a need for confirmatory testing.  R. at 860 (listing "fibromyalgia" as diagnostic impression).  Even fibromyalgia, though calling for consideration of distinct aspects, requires the presence of disabling functional limitation, making consideration of functionality proper and required. SSR 12-2p (requiring "sufficient objective evidence" regarding impairment of "functional abilities"). SSA 12–2p (SSA), 2012 WL 3104869, at *2 (July 25, 2012). Finally, each state reviewer explicitly referenced and considered the treating records and the limiting effects of Ross's fibromyalgia.  *See* R. at 94 (Sadler); R. at 110 (Brown).  Many of Ross's criticisms do not effectively grapple with the actual state of the record.

*The ALJ Validly Interpreted and Applied SSR 12-2p*

Plaintiff's second argument for relief is that the ALJ decision should be reversed because it failed to follow the binding analytical mandates of SSR 12-2p.[21] The Court disagrees.

---

[21] "SSRs are binding on the Social Security Administration." *Riddle*, 2018 WL 822428, at *3.

ALJs reviewing fibromyalgia-related disability claims are in a difficult spot. On the one hand, objective evidence of the condition is fleeting. *Gursky v. Colvin*, No. 16-CV-2654-TMP, 2017 WL 6493149, at *9 (W.D. Tenn. Dec. 19, 2017). On the other, a finding of disability in a fibromyalgia related claim still requires "sufficient objective evidence."[22] SSA 12–2p (SSA), 2012 WL 3104869, at *1; *Hall v. Comm'r of Soc. Sec.*, No. CV 15-12904, 2016 WL 8115401, at *6 (E.D. Mich. July 25, 2016). SSR 12-2p ("the ruling") helps reviewers navigate this challenging terrain. It provides "guidance on how [SSA] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [SSA] evaluate[s] fibromyalgia in disability claims." SSA 12–2p, 2012 WL 3104869, at *1 .

Broadly speaking, "the [r]uling requires the ALJ [to] give special consideration to unique features of fibromyalgia[.]" *Riddle v. Comm'r of Soc. Sec.*, No. 17-10905, 2018 WL 822428, at *3 (E.D. Mich. Feb. 12, 2018). SSR 12-2p's guidance is bifurcated. It first applies in determining whether the claimant has a medically determinable impairment (MDI) of FM and then, if necessary, offers further guidance for how to determine whether that FM MDI justifies a disability finding. The ruling is a binding guide for interpreting existing rules, but not a source of new ones. *Boshers v. Comm'r of Soc. Sec.*, No. 1:16-CV-922, 2017 WL 2838236, at *8 (W.D. Mich. July 3, 2017); *see also Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 399 (6th Cir. 2016).

---

[22] A fibromyalgia diagnosis does not automatically "equate to a finding of disability or an entitlement to benefits." *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013). In fact, courts have observed that most cases of fibromyalgia do not render the claimant "totally disabled from working." *Taylor v. Saul*, No. 19-1289-TMP, 2020 WL 3889027, at *3 (W.D. Tenn. July 10, 2020).

16

Plaintiff points to multiple examples that allegedly show the ALJ "failed to assess Ms. Ross's fibromyalgia under SSR 12-2p." DE 12-1 at 1,14.[23] Several are quickly resolved. First, that the ALJ "never mentioned SSR 12-2p" is not *per se* a basis for reversal. *Riddle*, 2018 WL 822428, at *3 (reversing an ALJ for declining to apply the substantive requirements of SSR 12-2p, not for failing to mention SSR 12-2p). Second, Plaintiff's sparsely cited argument that Defendant failed to employ SSR 12-2p's diagnostic criteria (DE 12-1 at 14) is not relevant. The diagnostic criteria are used for establishing whether a claimant has an MDI of FM. Ross's MDI of FM is not in dispute. R. at 22. Accordingly, "[t]o the extent…[Plaintiff's] arguments suggest that the ALJ failed to explicitly apply 12–2p's diagnostic criteria for determining whether a claimant has an MDI of fibromyalgia, such error—to the extent it exists—is harmless." *Luukkonen*, 653 F. App'x at 399.

The Court also does not agree with Plaintiff's unsupported contention that the ALJ's search for "traditional objective medical signs…[was] contrary to SSR 12-2p" (DE 12-1 at 14). SSR 12-2p recognizes the need to accommodate a relative dearth of objective evidence in fibromyalgia claims. However, "[a]s with any claim for disability benefits, before [SSA finds] that a person with an MDI of FM is disabled, [it] must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSA 12–2p (SSA), 2012 WL 3104869, at *2; *Hall*, 2016 WL 8115401, at *6 ("[Claimant] is wrong to suggest that fibromyalgia

---

[23] ("[T]he ALJ never mentioned SSR 12-2p or any of its requirements. She did not mention any of the diagnostic criteria for establishing or evaluating fibromyalgia. Rather, she looked for traditional objective medical signs which is contrary to SSR 12-2p. She focused on irrelevant evidence like normal range of motion testing, mild x-ray findings, no abnormal movements, no clubbing/cyanosis, intact manipulation and strength to find Ms. Ross' allegations were not consistent with the medical evidence.") DE 12-1 at 14.

is a 'rare exception' to the Social Security rules and regulations in that the condition supposedly need not be supported by objective medical evidence.").

Finally, it is not true that "the ALJ never mentioned" any of SSR 12-2p's requirements. DE 12-1 at 14. The Ruling directs that, when "evaluat[ing] a person's statements about his or her symptoms and functional limitations," an ALJ should apply the "two-step process set forth in . . . SSR 96-7p." SSA 12–2p (SSA), 2012 WL 3104869, at *2.[24] "SSR 96-7 has since been rescinded and replaced with SSR 16-3p." *Cassandra S. v. Berryhill*, No. 1:18-CV-00328, 2019 WL 1055097, at *8 (S.D. Ind. Mar. 6, 2019). Here, the ALJ explicitly acknowledged and discussed the 16-3 requirement. R. at 25.  The step effectively happened.

However, SSR 12-2p requires ALJs to "give special consideration to unique features of fibromyalgia." *Riddle*, 2018 WL 822428, at *3. Plaintiff raises valid concerns about this decision's relative lack of acknowledgement of fibromyalgia's specific challenges. The ALJ frequently invokes Ross's benign physical examination results and lack of corroborating evidence when explaining her decision. *Kalmbach v. Comm'r of Soc. Sec., 409 F. App'x 852*, 861 (6th Cir. 2011) (noting the problems with overemphasizing objective evidence—or a lack thereof—when evaluating an FM claim). She relied on the claimant's ability to perform regular chores and daily activities to support her finding that Ross was not disabled. *Id.* at 864 ("These minimal activities are hardly consistent with eight hours' worth of typical work activities."). While the ALJ did rely on a longitudinal record, she could have more explicitly discussed how fibromyalgia's waxing and waning symptoms factored into her decision. SSA 12–2p (SSA), 2012 WL 3104869, at *6; *see*

---

[24] That two-step process requires "requires the hearing officer to first determine whether the evidence supports a finding of a pain-producing illness, and second to determine if the evidence supports a sufficient finding of severity to constitute disability." *Newman v. Saul*, No. CV 19-11420-WGY, 2020 WL 4049915, at *11 (D. Mass. July 17, 2020).

*also Riddle*, 2018 WL 822428, at \*3. Finally, she could have more directly acknowledged that Ross's FM may cause fatigue or otherwise impact her ability to work. *Hampton v. Comm'r of Soc. Sec.*, No. 16-CV-12135, 2017 WL 4236541, at \*5-6 (E.D. Mich. Sept. 25, 2017).

The absence of a more extensive discussion on these unique fibromyalgia related issues cuts against SSR 12-2p's underlying goal of giving "special consideration" to the disease. *Riddle*, 2018 WL 822428, at \*3. Accordingly, Ross understandably complains of a failure to supply "good reasons." But this review is a deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley*, 581 F.3d at 405. Applying that standard, the Court sees no basis for reversal. *Wilson*, 378 F.3d at 549. ("[A]n agency's interpretation of its own regulation is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation."); *see also Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). The ALJ did, without question, produce a thorough and detailed, record-based decision. She accounted for the full medical record and reviewed the entirety of Dr. Overstreet's course of treatment. Although the precision on fibromyalgia may have been less than perfect, the ALJ did fairly account for each analytical step in a way the record substantially supports. And again, fibromyalgia is different but not a pass to disability. As the Court said in *Masters v. Comm'r of Soc. Sec.*, 707 F. App'x 374, 379 (6th Cir. 2017):

> Here, the ALJ . . . found that Masters' fibromyalgia was severe. The ALJ concluded, however, that the functional limitations Masters' fibromyalgia presented did not entirely preclude Masters from jobs in the national economy. A finding that a claimant suffers from fibromyalgia is not alone sufficient to support a disability claim.

The ALJ defensibly proceeded.

Faced with a disconnect between a claimant's allegations[25] regarding the "intensity, persistence, and limiting effects" and the objective evidence on record,[26] the ALJ, as she was required to do, made a decision informed by a holistic review of the evidence in Ross's longitudinal record pursuant to the substance of SSR 12-2p and 16-3p. R. at 26.[27] *See also Boshers*, 2017 WL 2838236, at *9; *Justice v. Comm'r of Soc. Sec.*, No. CV 16-12448, 2017 WL 4925766, at *10 (E.D. Mich. Aug. 11, 2017), *report and recommendation adopted*, No. 16-12448, 2017 WL 4416450 (E.D. Mich. Oct. 5, 2017). As Defendant notes, "[n]othing more was required by SSR 12-2p." DE 12-1 at 7.[28] As *Luukkonen* held, in a case where the ALJ applied the ruling's principles though without explicit citation: "That is all that is required under our precedents." 653 F. App'x at 399.

## III.    CONCLUSION

In sum, ALJ Jackson exhaustively examined the conditions noted in Ross's medical history. See R. at 19–32. The ALJ reviewed the entire record for evidence to inform her disability analysis. That analysis (which audited all records for, the progression and improvement in, and the prognoses for each identified impairment, all with a backdrop of conservative treatment and a

---

[25] The ALJ also had the benefit of seeing and evaluating Ross as a witness. The witness described her many claimed limitations, and the ALJ could, for example, contrast Ross's claims of confusion and "fog" against the cogency, clarity, and memory reflected in her testimony. The ALJ included this within the framework of her decision. *See* R. 27-28.

[26] Plaintiff notably seems to concede as much. "The medical evidence generally substantiates the ALJ's findings." DE 12-1 at 8.

[27] "If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3P (SSA), 2017 WL 5180304, at *6 (Oct. 25, 2017).

[28] *But see Riddle,* 2018 WL 822428, at *3-4 (reversing an ALJ decision for failure to comply with SSR 12-2p because the decision "never appeared to consider . . . that 'the symptoms of fibromyalgia can wax and wane[,]" relied improperly on Claimant's ability to do housework as a basis for a finding of no disability, and "never appeared to consider SSR 12-2p's specific mention of fatigue" and how it would affect Claimant's job prospects).

typically non-compliant patient) led to a particular RFC which, in turn, formed the basis for hypothetical questioning of the vocational expert. The VE "testified that given all of these factors the individual would be able to perform" several jobs available to an individual. R. at 31. Judge Jackson's decision is supported by substantial evidence and rests on proper legal standards.

For all these reasons, the Court **GRANTS** DE 14 and **DENIES** DE 12. The Court will enter a separate Judgment.

This the 22nd day of December, 2020.

**Signed By:**

_**Robert E. Wier**_

**United States District Judge**